

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

October 9, 1990

Honorable Jim Mapel
Criminal District Attorney
Brazoria County Courthouse
Angleton, Texas 77515

Opinion No. JM-1232

Re: Authority of a county to conduct a private resale of property under section 34.05 of the Tax Code (RQ-1913)

Dear Mr. Mapel:

If property upon which delinquent taxes are owed is sold at a tax sale to a taxing unit that is a party to the delinquent tax judgment, the taxing unit may resell that property, subject to any right of redemption existing at the time of the sale. You ask about the proper method by which such a resale of real property by a taxing unit may be effected. Specifically, you ask:

> 1. Is a county authorized to conduct a private resale of property pursuant to the provisions of V.T.C.A. Tax Code Section 34.05? and the the related question,

> 2. If a county does not elect to resell the property pursuant to the provisions of Section 34.05(c) and (d) at a Sheriff's sale, must a county conduct a resale of such property pursuant to the competitive (sealed bids) bidding procedure or public sale provisions of V.T.C.A. Local Government Code, Section 263.001 or 272.001?

By "private sale" we understand you to mean a sale that is conducted without the necessary compliance with the procedural requirements of the following statutes: (1) Rule 646a of the Rules of Civil Procedure, which governs execution sales and requires the sheriff to sell property at a public auction; (2) chapter 263 of the Local Government Code, which permits the sale of property at a public auction; or (3) chapter 272 of the Local Government Code, which permits the sale of property by a sealed-bid

procedure.[1] We answer your first question in the affirmative; section 34.05 of the Tax Code impliedly authorizes a private resale of real property purchased by a taxing unit at a tax sale. We answer your second question in the negative, because subsections (a) and (b) of 34.05 of the Tax Code provides a means for the county to sell real property other than those set forth in chapters 263 and 272 of the Local Government Code; those chapters are not controlling.

The Tax Code specifies three methods by which the collection of delinquent ad valorem taxes are enforced. First, a delinquent taxpayer's personal property may be seized and sold by a taxing unit, with the proceeds intended to offset the accrued taxes, penalty, and interest. Tax Code §§ 33.21 - 33.25. Second, a taxing unit may file suit for judicial foreclosure of the tax lien securing the tax. Id. §§ 33.41 - 33.54. And third, a taxing unit may file suit to enforce personal liability for the tax. Id. §§ 32.07, 33.41 - 33.54.

In the event that delinquent tax collection is enforced by either of the first two methods, collection is effected

---

1. Generally, counties are governed in the sale of county realty by only two statutory provisions:

> The sale of property owned by counties and other political subdivisions is governed strictly by statute. The conveyance of such property in any other manner is void. There are, respectively, two sets of Code provisions now appearing in title 8 of the Local Government Code which apply to counties and other political subdivisions: Code § 263.001 et seq. and Code § 272.001 et seq.

35 D. Brooks, County and Special District Law § 9.24 (Texas Practice 1989). However, subsection (d) of section 34.05 of the Tax Code states that except as provided by that subsection, all public sales requested by subsection (c) of that section shall be conducted in the manner prescribed by the Rules of Civil Procedure for the sale of property under execution. Thus, the procedures by which counties convey real property at public sale may be governed by one of three different statutory provisions, depending upon the nature of the transaction involved.

by a tax sale;  such sales are governed  by subchapter A  of chapter 34 of  the Tax  Code.  Tax  Code § 34.01.   Property seized or ordered sold pursuant to foreclosure of a tax lien must be sold  in the  manner that similar property is  sold under execution, except as provided in that subchapter.  Id. § 34.01(a).  If  a  sufficient  bid  is  not  received,  the officer making  the sale  must  bid the  property off  to  a taxing  unit  that  is  a  party  to  the  judgment.   Id. § 34.01(c).  Section  34.05  of  the Tax  Code  governs  the subsequent resale of such property by the purchasing  taxing unit.  It is with this section that you are concerned.

Section 34.05 of the Tax Code provides the following:

> (a)  If property is sold to a taxing  unit that is a party  to the judgment, the  taxing unit may  sell  the  property at  any  time, subject to any  right of redemption  existing at the time of the sale.

> (b)  Unless the property is sold  pursuant to Subsections (c) and  (d) of this  section, it may not be sold  for less than the  market value specified  in  the  judgment  of  fore- closure or the total amount of the  judgments against  the  property,  whichever  is  less, without  the  consent  of  each  taxing  unit entitled to  receive  proceeds  of  the  sale under the  judgment.  Joinder  of the  taxing units  in  the  conveyance  of  the  property constitutes consent.   The presiding  officer of the governing  body of a  taxing unit  may consent in behalf of the taxing unit.

> (c)  The taxing unit  purchasing the  pro- perty by resolution of its governing body may request the sheriff to sell the property at a public sale.  If  the purchasing taxing  unit has not sold the  property within six  months after the date on which the owner's right  of redemption terminates, any  taxing unit  that is entitled to receive  proceeds of the  sale by  resolution  of  its  governing  body  may request the sheriff  in writing  to sell  the property at a public  sale.  On receipt of  a request  made  under  this  subsection,   the sheriff shall sell  the property as  provided by Subsection (d) of this section.

(d) Except as provided by this subsection, all public sales requested as provided by Subsection (c) of this section shall be conducted in the manner prescribed by the Rules of Civil Procedure for the sale of property under execution. The notice of the sale must contain a description of the property to be sold, which must be a legal description in the case of real property, the number and style of the suit under which the property was sold at the tax foreclosure sale, and the date of the tax foreclosure sale. The officer conducting the sale shall reject any bid for the property if it is his judgment that the amount bid is insufficient. If all bids are insufficient, the property shall be readvertised and offered for sale again. The acceptance of a bid by the officer conducting the sale is conclusive and binding on the question of its sufficiency. An action to set aside the sale on the grounds that the bid is insufficient may not be sustained in court, except that a taxing unit that participates in distribution of proceeds of the sale may file an action within one year after the date of the sale to set aside the sale on the grounds of fraud or collusion between the officer making the sale and the purchaser.

(e) The presiding officer of a taxing unit or the sheriff selling real property pursuant to this section shall execute a deed to the property conveying to the purchaser the right, title, and interest acquired or held by each taxing unit that was a party to the judgment foreclosing tax liens on the property. The conveyance shall be made subject to any remaining right of redemption at the time of the sale.

(f) An action attacking the validity of a resale of property pursuant to this section may be not instituted after the expiration of one year after the date of the resale. (Emphasis added.)

Prior to 1947, section 9 of article 7345b, V.T.C.S., one of the predecessor statutes to section 34.05, did not

expressly authorize a private resale by a taxing unit of real property purchased at a tax sale; indeed, it was construed as not authorizing a private sale. Attorney General Opinions V-124 (1947); O-5056 (1943). But see Attorney General Opinion O-6978 (1946).[2] Section 9 then provided only that any such property could not be sold for less than its adjudged value or the amount of the judgments against the property in the suit, whichever was lower, without the written consent of all taxing units having tax liens against the property.

After amendment in 1947, section 9 of article 7345b, V.T.C.S., provided explicitly that a resale could be effected either at a public or a private sale:

> The taxing unit may sell and convey said property so purchased by it, or which has heretofore been purchased in the name of any officer thereof, at any time in any manner determined to be most advantageous to said taxing unit or units either at public or private sale, subject to any then existing right of redemption . . . but such property shall not be sold by the taxing unit purchasing the same, at private sale, for less than the adjudged value thereof, if any, as established in the tax judgment, or the total amount for which such judgment was rendered against the property in said suit, whichever is lower, without the written consent of all taxing units which in said judgment shall have been found to have tax liens against said property. (Emphasis added.)

---

2. Prior to the enactment in 1937 of article 7345b, V.T.C.S., each taxing unit could independently enforce its tax lien against the same property with different suits, judgments, executions, sales and conveyances. See V.T.C.S. art. 7328. Article 7345b permitted the consolidation of such lawsuits. Though article 7328 was not repealed until 1979, see Acts 1979, 66th Leg., ch. 841, § 6(a)(1), at 2329, section 12 of article 7345b provided that its remedies were cumulative and that its provisions controlled in the event of conflict with other statutes. Article 7328 was also construed not to authorize a private sale. Little v. Dennis, 187 S.W.2d 76 (Tex. 1945).

See Attorney General Opinion V-576 (1948).

It is the absence in section 34.05 of any reference to a private sale that concerns you. You suggest that even in the absence of any express authority to conduct a private sale, the legislature intended that private sales be permitted. We agree.

Subsections (c) and (d) of section 34.05 of the Tax Code set forth detailed procedures for the resale by a taxing unit of property purchased at a tax sale that must be followed in the event that a resale is not effected pursuant to subsection (a) and (b) of that section. It is clear then that the legislature intended that some means for conducting a resale of such property be permitted other than the one set forth in subsections (c) and (d). Subsection (a) of section 34.05 permits a taxing unit that purchases property at a tax sale to sell that property "at any time," subject to any right of redemption existing at the time of the sale. If subsections (a) and (b) of section 34.05 were construed not to permit private sales, then a county that purchases such real property and seeks to resell it perforce would be required to comply with the provisions of chapters 263 and 272 of the Local Government Code.[3]  See, e.g., Attorney

---

3.    Chapter 263 of the Local Government Code governs the sale or lease of property by counties; its predecessor statute was article 1577, V.T.C.S., which was codified in the 1925 codification of Texas statutes from a previous statute. Chapter 272 of the Local Government Code governs the sale or lease of property by municipalities, counties, and certain other local governments; its predecessor statute was article 5421c-12, V.T.C.S., which was first enacted in 1969.

In Attorney General Opinion M-524 (1969), this office held that the enactment of the later statute did not have the effect of superseding either article 1577 or article 7345b:

This does not mean, however, that [article 5421c-12] has no effect. It is a well established rule that when a general intention is expressed [i.e. the enactment of article 5421c-12] and also a particular intention which is incompatible with the general
(Footnote Continued)

General Opinions JM-1197 (1990); JM-335 (1985); V-124 (1947); O-5056-A (1943). The issue is whether the requirements of chapters 263 and 272 of the Local Government Code act to permit a county to resell property "at any time." If they do not, it is reasonable to assume that the legislature, by the use of the quoted phrase, did not intend that those chapters control and intended that counties be permitted to conduct a private sale.

Section 263.001 of the Local Government Code provides:

> (a) The commissioners court of a county, by an order entered in its minutes, may appoint a commissioner to sell or lease real property owned by the county. The sale or lease must be made at a public auction held in accordance with this section unless this chapter provides otherwise.

> (b) The appointed commissioner must publish notice of the auction before the 20th day before the date the auction is held. The notice must be published in English in a newspaper in the county in which the real property is located and in the county that owns the real property if not the same county. The notice must be published once a

---

(Footnote Continued)

one [i.e. the provisions of articles 1577 and 7245b], the particular intention which is incompatible with the general one shall be considered an exception to the general and in such cases, full effect may be given to the general rule beyond the scope of the local or special law and by allowing the latter to operate according to its special purposes and aims the two acts can stand together.

. . . .

Therefore, on the basis of the foregoing authorities, it is our opinion that [article 5421c-12] is operable outside the scope of Article 1577, Vernon's Civil Statutes, and Article 7345b, Section 9, Vernon's Civil Statutes.

week for three consecutive weeks before the date the auction is held.

(c)   If the real property is sold, a deed that is made on behalf of the county by the appointed commissioner in conformance with the order entered under Subsection (a) and that is properly acknowledged, proved, and recorded is sufficient to convey the county's interest in the property.

Section 272.001 of the Local Government Code provides:

(a)   Except for the types of land and interests described by Subsection (b), before land owned by a political subdivision of the state may be sold or exchanged for other land, notice to the general public of the offer of the land for sale or exchange must be published in a newspaper of general circulation in either the county in which the land is located or, if there is no such newspaper, in an adjoining county.   The notice must include a description of the land, including its location, and the procedure by which sealed bids to purchase the land or offers to exchange the land may be submitted.   The notice must be published on two separate dates and the sale or exchange may not be made until after the 14th day after the date of the second publication.

(b)   [Contains list of types of land and real property interests to which the notice and billing requirements of subsection (a) do not apply.]

It is apparent that neither section 263.001 nor section 272.001 of the Local Government Code permits a county to resell real property "at any time." Therefore, it is apparent that the legislature did not intend for those sections to control a resale by a county of property purchased at a tax sale. Accordingly, we construe subsections (a) and (b) of section 34.05 of the Tax Code impliedly to permit a private sale; chapters 263 and 272 of the Local Government Code do not apply in an instance in which a county resells real property purchased at a tax sale.

## S U M M A R Y

Subsections (a) and (b) of section 34.05 of the Tax Code impliedly authorizes a county to resell real property that it purchases at a tax sale; chapters 263 and 272 of the Local Government Code do not apply in such situations.

Very truly yours

**J I M   M A T T O X**
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General